First case is Farmers Auto Insurance v. Michael Danner. That's case number 4110461 for the appellant Robert Chimmers and for the appellant William Townsend. Please proceed. Good morning, Your Honors. May it please the court, counsel, for the plaintiff appellant, Farmers Automobile Insurance Association, Robert Chimmers, from Preston, Stouffer in Chicago. Your Honors, this is an insurance coverage case. It's an appeal from Vermillion County and it involves the interpretation of a policy of insurance. I think that great philosopher and former catcher of the New York Yankees, Yogi Berra, said this is déjà vu all over again. Having been before two of the three of you once before several years ago on the first go-around, this case is familiar to the majority of this panel. Kids are playing ball on the Winkler property. The ball goes on to Danner's property. They want to get the ball. Cursing occurs. They go back and tell David Winkler that they can't get their ball. David Winkler goes on to Danner's property. In a fit of rage, it's alleged that Danner gets in his pickup truck at a high rate of speed, drives down the lane, steers into its Winkler, knocks him down, and pins him up against a fence. Danner exits his pickup truck, goes to the back of the truck, gets a golf club, and proceeds to beat Winkler with the golf club so violently that he breaks the golf club. Tracy Watson, who was residing with Danner at the time, leaves the house, runs down the lane, and joins the fray by kicking and hitting Winkler to the point where she punctures his lung. The allegations in the original lawsuit were unmistakably an intentional act on part of each defendant with an intent to harm Winkler. That lawsuit was tendered to Farmers for Defense. The defense was refused, and a complaint for declaratory judgment was filed. On the eve of the hearing, on the first dispositive motion in this case, which led to the first appeal of this case, Winkler submits an amendment. He added two counts, purporting to plead negligence. Count three was against Danner. He alleges the same operative core of facts, but there it alleges that in a fit of rage, Danner proceeded at a great speed and veered off the lane and failed to gain control of the truck, knocked Winkler down, pinned him against the fence. The only difference is, instead of steering the vehicle into him, he veered the vehicle into him. There's no golf club involved in this version or iteration of the facts. Count four is against Watson and alleges that she arrived, attempted to stop the altercation, but proceeded to hit and kick Winkler. The trial court ruled the second time that Farmers had a duty to defend. We submit to this court that this is this court's opportunity to look at a transparent attempt to plead into insurance coverage. This is not an indictment on an alternative or hypothetical pleading. There was no attempt by Winkler in his amendment, adding counts three and four, to allege that those counts were pled in the alternative or the hypothetical. These are successive pleadings, which we submit to this court can be skeptically reviewed, whereas here they are in response to the insurer's position to the original lawsuit. This was not an attempt by a plaintiff to file a multi-count complaint at the start, that is, a complaint that alleged negligence and intentional conduct. This was unmistakably intentional. There was clearly no coverage for the original complaint. Then when the dispositive motion was brought and the tort plaintiff, who was a party, realizes that there may be no coverage, he pleads these so-called negligent counts, which, if you ignore the labels but look at the totality of the facts and the circumstances, it is still remarkably intentional. This case is no different than the Cariotto case in the First District, where the tort plaintiff was stabbed by the defendant either 15 or 17 times, he wasn't sure, files a complaint alleging the intentional conduct, met with a dispositive motion, and then pleads a negligence count, which the First District of this court referred to as facetious allegations, that someone could allege that you could be negligently stabbed 17 times. The First District looked at this in Cariotto, it looked at it in SCR Medical Services, the Second District at the Vago case, the Third District less than a year ago at Guzik, which was the fire, and the Fifth District at Beacon v. Dodd. Counsel, I can envision negligent writing, but not negligent stabbing. How would you respond to that? You could certainly drive a vehicle negligently, but not when the vehicle is for the purpose of an assault or a battery. The allegations in the negligence count can't be divorced from the allegations in the intentional act count. This was still, a ball goes on property, the neighbor goes on to the other man's property to get the ball. Instead of just saying, get off the property, the allegations are, he got in a pickup truck, drove in a fit of rage at a high rate of speed into the neighbor, solely for the purpose of hitting him. When you read those allegations, called negligent, in the light of what was alleged in count one. The complaint doesn't say solely for the purpose of hitting him. Does it, Mr. Cheners? The negligence count. No. It alleges that after the unsuccessful attempt to look for the ball, as Winkler was looking for the ball, Danner proceeded to his pickup truck, got in it, and drove down his lane toward Winkler. Danner, in a fit of rage, proceeded at great speed. The truck veered off the lane and he failed to gain control. The truck hit and knocked Winkler into the fence and the ground, causing the injuries that required medical attention. As a direct and proximate result of Danner's negligence, failure to exercise ordinary care in operation of his truck, he incurred the damages that are alleged. What part of that doesn't allege a negligence claim? Well, it alleges the use of a vehicle, allegedly in a negligent manner, solely to plead into insurance coverage, because the same event in count one had been described as an intentional act with the intent to harm. The only difference in these allegations is in count one, which is the intentional count, he steered off the lane into Winkler. Mr. Chemers, I take it from your argument that you believe they could have started out with a negligence claim and an intentional tort claim. They could have pled a four-count original complaint. It would be a classic Pepper situation. You have a negligence count, you have an intentional act count. The insurance company presented with that could hire a panel counsel. Counsel would be in a conflict, because it would be in the insurance company's best interest for the injuries to have been caused by an intentional act and not covered. It would be in the insurance best interest for his conduct to be found negligent and covered. So they turned it over to independent counsel, Pepper's counsel, based on our Supreme Court's decision. That's not this case. This didn't start out that way. That would have been the classic Pepper situation. The classic insurance company and the conundrum with respect to how to defend the case, you have to disclose the conflict, give the insured independent counsel. This started out as a complaint which unmistakably pled an intentional act with an intent to harm on behalf of both actors, Watson and Danner. In response to the insurance company's position, Winkler amends the complaint. Even the timing of this is suspect. It was amended the day before the initial hearing on the motion for judgment on the pleadings. It's a knee-jerk reaction to no insurance coverage. It's what the Fifth District first called a transparent attempt to plead into coverage. The court has to look at the totality of the facts, not the labels, not what is called in one count. Driving at a great rate of speed in a fit of rage and steering the vehicle off the lane, in other words, aiming at Winkler. Instead, in the negligence count, it's the same operative fact, except here it is the truck veered off the lane. Now, if this was done initially, we would not be here. But to do it in response to the insurance company's position in a complaint for declaratory judgment, we have to name the tort plaintiff so that he or she is bound. They're a nominal but necessary party. And we did that here. Winkler stipulated to be out of the case and was dismissed. I believe that's C-131 of this record. But Winkler's not involved here. It's just between us and the insurers, the carrier and the insurers. And in this situation, where the response is – the timing of the response is suspect, and the allegations, when you take the labels off, still speak to an intentional act with an intentional result. There is no insurance coverage. Now, the defendants argue, well, under Pekin v. Wilson, you have to look at all the pleadings. You have to look at our counterclaim. They say this was self-defense, which is almost as remarkable as the allegations calling this whole transaction negligent. They say Pekin v. Wilson, the Supreme Court of Illinois, said you have to look at the defense raised by an insurer in this type of a case. Well, the fact is, in Pekin v. Wilson, the Supreme Court looked at an intentional act exclusion that had a self-defense exception. The defendants admitted, page 8 of their brief, that the policies they had with farmers did not have that exception. So is it your position, Mr. Chemers, that if there is no self-defense exception to the exclusion, then you can't argue what the other side is arguing? Yes, Your Honor. And we say that because the Supreme Court was very explicit about where it was going with the self-defense exception, bearing in mind that that case started out with Pekin on a CGL policy and farmers on a homeowners policy. And the court, I believe it was Jefferson County down in Mount Vernon, ruled for both insurers. Then the Fifth District reversed in part and affirmed in part. It reversed as to Pekin because Pekin had the exception in its intentional act exclusion. It asked the Farmers Auto Insurance Association, the same company here with the same type of policy, affirm the judgment on the pleadings that farmers had no coverage because that policy did not have the self-defense exception. That was 391 Illap 3rd, 505 at 517 to 518. That was the Fifth District in 2009, which led to the Supreme Court taking this on. And people seem to regard, a lot of lawyers seem to regard the idea in Pekin versus Wilson, that you can look beyond the allegations in a complaint and the four corners of an insurance policy. It's like a superhighway to a new means to find coverage. And that's not what the Supreme Court said. Well, what about Leverton? Because I couldn't tell from reading Leverton whether there was a self-defense exception in that policy. I don't recall, Your Honor, if there was a self-defense exception in Leverton, other than Leverton is an unusual case because it was a negligent assault. I believe Leverton was the case where there was a fight in a bar. Somebody was wielding a beer bottle and went to swing it. But when he went back, he hit the person behind him, and it was a negligent assault. Usually an assault is intentional, but the court there said you can have an intentional act with a negligent result. I think that was the essence of Leverton. And I don't recall if the exclusion there was like the one in this case. You can't tell from the case whether there was a self-defense exception in their case. And that's one of the average cases out there I didn't lose. But here we do not have the self-defense exception, and that has been admitted by the defendants, which apparently was an issue the first time this case was before here. Because I think we had some inconsistencies with our policy, but that was straightened out on remand. The concept that this could have been in self-defense is belied by these pleadings. It may have been self-defense after Winkler was being beaten by Danner and by Watson. But certainly Danner's driving and being beaten with a golf club cannot be regarded as self-defense to a neighbor coming onto the property to get a baseball. Nor can the other person in this fray who comes out of the house, sees the fight, and joins it by kicking and beating Winkler. Could that be considered self-defense based on the allegations Winkler had? It is what the defendants say stretches the imagination. In a public policy sense, why should the plaintiff's order of pleadings destroy or take away the possibility of coverage for a defendant? Your Honor, there are numerous cases that stand for the proposition that the tort plaintiff is not the architect of insurance coverage. That the duty to defend analysis, as this Court well knows, is within the eight corners. That is to say, you read the four corners of the complaint, the allegations therein, in the light of the four corners of the policy of insurance. And if it's covered or potentially covered, there's a duty to defend. Well, here you start with a complaint that was in two counts. Clearly, unmistakably pled an intentional act with an intent to harm. And there's just no doubt about it, that's what Winkler pled. And that was not covered. And in response to that, the insurance company tells its insured, there's no coverage. But it can't stop there. It does what the law requires, and it filed a complaint for declaratory judgment. Joined the tort plaintiff, so the tort plaintiff is now aware of what his allegations created. There's no doubt the tort plaintiff creates those allegations. That's what the insurance company deals with. In response to the insurance company's position, the tort plaintiff, without saying that there was a discovery taken, that there is new evidence, but in response to the complaint, the knee-jerk reaction, the transparent attempt to plead into coverage, says not only was it intentional, not only did he get out of his truck and get a golf club from the back of the truck and beat me with it so badly, he broke the golf club, but he did it negligently. As if that creates coverage. So notwithstanding public policy, the fact remains. Mr. Chemers, the negligence count doesn't even talk about the golf club. Amazingly. Correct, it doesn't. Right, but you just said, he negligently beat me with the golf club. He intentionally beat him with the golf club. That's the amazing thing about the negligence count, Your Honor. The golf club's not mentioned. Right, it's just talking about the driving. The only negligent thing about the use of the golf club is the fact he broke it. I don't mean that facetiously. That's the strange thing about the negligence count. Well, you're arguing then that since after he was struck by the truck, he didn't use the golf club to beat him, that that should show us that the golf club use was intentional and therefore driving that truck was also intentional. He drove the truck into Winkler, got out of the truck. The allegations are that he went to the back of the truck, got the golf club, and then beat Winkler with the golf club to the point that he broke the golf club. That's in the intentional count. The negligence count, just as Pope says, does not mention the golf club. Well, do you think it's permissible for us to infer that since the use of the golf club was intentional, it follows that the use of the truck in running over Winkler also was intentional? In count one, it's unmistakable. He alleges that he steered the vehicle. Is that a proper analysis for this court to undertake? Yes, it is. The court looks at the totality of the facts. If this court did not have the negligence count and the court below said there was a duty to defend, the unmistakably intentional counts, this court would reverse. This court has both of them before, as it did the first time. And when you analyze this in the way that the first district did in Carioto, the second district did in Vago, the third district did in Guzik, and the fourth district did in Pekin v. Dial, you have to look at what has been called the tagline, the transparent attempt to plead into coverage, which one court said, to call it negligence is facetious, which another court said stretches the imagination, which the fifth district said in more than one case. Those cases are like sexual assault cases or a stabbing case, something that clearly wouldn't be negligent. What about an assault with a vehicle in a golf club and kicking and hitting, which is what we have here? Carioto was a stabbing. It was an assault and battery. True. Guzik was a fire. Vago was a patron in a country club, grabbed a waitress, put his arms around her. One of the allegations were pelvic thrusts into her body, sexually aggressive manner, and the second district of this court held that if that occurred, then the insured was certainly consciously aware that his conduct would cause harm and there would be no coverage. That was alleged to be negligent, grabbing a waitress in a restaurant and pelvic thrusts were the words of the panel. I would like to save a few minutes for rebuttal, if I may, Your Honors, and I would ask this court to reverse. Thank you. Thank you. Counsel? Hey. Hey, please report, Mr. Chambers. I think we have two things here we have to look at, the driving and what happened afterwards. Right after this complaint was originally filed in September of 07, there was an answer and counterclaim filed, which raised the possibility that there's more involved than just the allegations of the initial two counts of the complaint. That counterclaim alleges that Winkler was the aggressor in this case, not Danner, not Watson. The court can properly consider other pleadings in this situation and I think to fail to do so in this case is to make a decision that properly belongs in the trial court. As the trial court said, and Justice Gertin, Judge Gertin in his opinion said, the allegations in even count one and count two can rise to negligence. There can be negligent driving. There can be reckless driving. It doesn't have to be intentional. Whether or not it was intentional is something that has to be determined in the trial court and not in the declaratory judgment action. To fail to do, to look at all the, to fail to look at all of the pleadings in this case as required by Pekin versus Wilson and State Farm versus Halliburton Root is to decide issues that are to be decided in the trial court in the underlying case and by rule cannot be decided in a declaratory judgment action. The affirmative defenses and counterclaims allege that Winkler initiated the action. As pointed out in the counterclaims that were originally filed and the other counterclaims that have been filed since, prior experience shows that Winkler had already once put Danner in the hospital with a feeding. He was attempting to encroach on Danner's property when there was a permanent restraining order against that. What we have to do is look at all of the pleadings in this case because When did you say the first counterclaim was filed? It was filed with the original answer, your honor, in November, on November 7, 2007. And it raises these points. Oh, excuse me a moment. Anyway, this is a case where you have to look at, that goes beyond just the original complaint because there are compelling and unusual circumstances here. We have to take all of the pleadings into account to determine whether there is a potential for coverage here. Are some of the acts negligent? There can be negligent self-defense. Maybe this is a case where there is excessive force used by one or the other. Maybe it's not. But again, that's not the declaratory judgment towards a job to determine it. Mr. Townsley, can you tell me, if you're going to raise a negligent self-defense claim, does there have to be an exception in the policy for self-defense? No. Okay, what case says that? Blackburn v. Johnson, 107-107-013-557 from our own 4th District. Leverton, No. 1, State Farm v. Leverton. In Leverton, you can't tell whether there was a self-defense exception to the policy. Oh, no. You asked if there needed to be one, I thought. Right. In Leverton, you don't know if there is or isn't, right? No, you don't. But then there's also... But is there any case that addresses that directly? Yes. Blackburn v. Johnson and the cases that Blackburn has cited. There's a series of about three or four cases that speak to that very point that say that you can have a negligent self-defense. Another one is Lincoln-Logan Insurance v. Forenshell, F-O-R-N-S-H-E-L-L, 309 Elab 3rd, 479. So the policy doesn't have to have a provision in it, according to these cases. Well, how do Watson's allegations arise to negligent self-defense? Watson's allegations arise to negligent self-defense because if you look at the counterclaims and the allegations there, that she was trying to break up the altercation. She was not intentionally attacking Winkler. She was trying to step between them. And in doing so, Winkler alleges that she kicked and hit him. She denies that. That's a fact question. Did she or not? So how does it arise to negligence? Maybe she did. Maybe she did cause some damage to Winkler. But we don't know that in the declaratory judgment case. In order for the court to say that that happened, it has to decide some issues that should be decided in the trial court. So negligence can arise out of a self-defense. Negligence can arise out of Watson's actions. But I guess I'm getting at in this case with Watson, she intentionally goes over where this altercation is occurring and does something intentionally. How does that arise to a negligent self-defense claim? That's the problem I'm having with your case. Okay. In Watson's case, as I said... As opposed to the guy in Leverton who raises his arm back and doesn't hurt the person he's intending to hit with a beer bottle. He strikes somebody behind. I can see that. But how does this pattern fit that? As Watson said, she was trying to break it up. And now in her joining the fray and trying to break it up, trying to act as a peacemaker, the bare allegation from Winkler is, she hurt me. Now we don't know whether Winkler was hurt by Watson or not. And if he was hurt by Watson, how? She says, Winkler says, she kicked me. That's a fact question. Did she or not? And if she did kick, did she do it intentionally? Or did she do it in trying to, these two guys rolling around on the ground, did she maybe step on Winkler as she was trying to step between them? Did she mistakenly, did her foot mistakenly come in contact with Winkler while she was trying to break up the fight? Were they rolling around on the ground? Yes, they were, sir. Do you have any cases which state this court should not consider the counts 3 and 4 were added only after it became clear that insurance would not cover the activity under counts 1 and 2? Are you asking, do I have cases? Are there any cases that say that that is an improper consideration for this court to undertake? Not that I'm aware of. So we can't take that into consideration? I believe you can't. And I will say this, Judge. The Cariato case, they refer to that and the timing of the amendments. That was done by a learned counsel, Mr. Steigman, who is an experienced trial attorney. And it was done, we don't know why. But in order for the court not to grant coverage in this case, the court has to assume it was done for the reason that Mr. Chermer says. It's just as plausible that it was done because Mr. Steigman, knowing that, gee, maybe there's something here that with these counterclaims and the other evidence, the other things that I've done to investigate this case, maybe Winkler has a little bit of exposure here. Maybe I should include these matters. Maybe it's not a clear-cut, intentional act. Maybe there is some accidental activity going on here. We don't know what went through Mr. Steigman's mind. And, of course, the court can take into account, as has been said in Wilson and even in this case, Pekin v. Danner, number one, that you can take into account that the timing, you have to assume that Mr. Chermer is right, that the timing was done to trigger coverage in a situation where it's not clear if everything is intentional. Now, I can see in some of the cases that Mr. Chermer has cited where you have intentional acts and at the last minute try to backdoor coverage. I understand that. But those are cases where the act, the initial act, is clearly intentional. In this case, the initial act is not clearly intentional. It could be negligent driving. It could be excessive use of force. It could be any number of things that would trigger negligence and trigger coverage. So I don't think that you can take the clear-cut, absolute word in the initial complaint and say that's the only way things could have happened. Do you concede that by not including the golf club in the amended count three that that indeed was an intentional act, assuming it occurred? The golf club? Right. Oh, I think swinging the golf club is an intentional act. Just like swinging a beer bottle in Leverton 1 and 2. That's an intentional act. What caused that act? Was it the version that is set out in counts one and two? Or is there something else that happened? Did Winkler become the aggressor? Was it necessary for Danner to do so? It happened after Winkler had been struck by the truck, didn't it? There's a question whether it was actually struck by the truck. The underlying case, you know, they deny. And I know you can't in summary judgment. You can't just rely on the denial to create a fact issue. But they have counterclaims. They have affirmative defenses that have been filed that say that Winkler was not struck by the truck. And I think you have to take into account all of those possibilities that are raised in all of the pleadings and not just rely on Mr. Steigman's drafting ability in count one and two and say this is the way things had to have happened. I still want to go back to Watson's counterclaim because isn't the allegation from Winkler or from Watson that she indiscriminately hit and kicked Winkler? That's the allegation, yes. And even if she's indiscriminately hitting and kicking, aren't those intentional acts that are excluded from the policy? She's intending to hit and kick, I guess is what I'm getting at. I think you have to look at, as I said, the totality of the circumstances, not just that. Well, that's the plaintiff's allegation. Pardon? The plaintiff alleges that Watson indiscriminately hit and kicked me. During this altercation. And Mr. Chemer's position is those are intentional acts that are excluded from the policy and there's no exception for self-defense in the policy. You agree with that? No, I agree. There's no self-defense exception. No. So how do you come within coverage? Well, I think you come within coverage because you have to look at all of the allegations and the counterclaims and affirmative offenses where Watson says that as she was trying to stop the altercation, that Winkler also was attempting to hurt her in addition to hurting Danner, whom he had put in the hospital one other time. These are not fairly neighbors, folks. We will all go home today and look at our neighbors with a new eye. Please, no. I didn't mean that. So I think you have to look at all of the facts, all of the pleadings in this case, and you cannot draw the absolute conclusion that Winkler is correct when he said everything that was done was done intentionally. I think that there is a potential for coverage. And as you well know, we're not talking indemnification here. That's a much higher duty to prove indemnification. There's much less duty under outboard marine case in our Supreme Court to prove coverage. And I think we've shown enough where we have proven that Danner and Watson are entitled to coverage at this point. So I would ask the court to affirm the trial court. And as I said, Judge Gertin, in his opinion, conceded that even the intentional counts, if you take out the word intent, quit labeling them, but just look at the other words in those accounts, can accurately state a negligence action. Mr. Townsley, didn't Judge Gertin find that the count against Watson didn't arise to a negligence claim? He found there was coverage under the affirmative defense's counterclaim. The complaint of the plaintiff didn't make it into a negligence claim. No, you're absolutely right, ma'am. So I would ask that the court affirm the trial court and grant Danner and Watson coverage under the farmer's policy for the negligent acts that were performed. Thank you. Thank you, Mr. Townsley. Mr. Chambers, rebuttal, please. Mr. Chambers, should I start out with a question for you? Please. Are you familiar with Blackburn v. Johnson? No. Okay. Justice Pope, you asked about the allegations against Watson, and that's a C-125 of the record. Watson arrived, attempted to stop the altercation, and indiscriminately hit and kicked at Winkler and Danner, striking Winkler. So clearly those were intentional acts. And then the next paragraph alleges that she acted negligently when she struck Winkler, causing injuries, including a punctured lung. And you can't do what Mr. Townsley said. You can't take out the negligence allegations and the intentional act allegations. You have nothing left. The lawsuit started as an intentional act lawsuit with an intent to harm, clearly, unmistakably not covered. In response to the insurance company's position, the negligence allegations came forward. This panel asked about what do you do with counterclaims or defenses, whereas here there is no self-defense exception to the intentional act exclusion. My suggestion, Your Honors, look at Pekin v. Wilson. Not the Supreme Court decision, but the Fifth District decision. I understand this court's not bound by the Fifth District, but they had the identical issue there. And they affirmed the judgment for the insurance company, where the homeowner's policy issued by the same insurer, in a case where there was a pled counterclaim, that it did not apply. There was no coverage because there was no exception to the bodily injury exclusion. 391 Illap III, 505. But that is the case that led to the Supreme Court, Pekin v. Wilson, which didn't deal with the homeowner's policy, because the judgment there was affirmed, and there was no attempt by the insurer to seek leave to appeal. My client, Pekin, sought leave to appeal on the CGL policy, and that's what led to the concept of looking beyond the four corners of the policy and the complaint, where there's a reason to do so. And in that case there was, because there was a self-defense exception to the bodily injury exclusion. We do not have that here. And you can't remove allegations from a complaint and say that, well, if this occurs, then it's covered. Is it covered, or is it potentially covered? And is it potentially covered based on the allegations of the complaint? If we submit in this case, it is not, and we'd ask the Court to reverse. Let me ask a question. If you do not prevail, does this become a PEPRS situation? It's a PEPRS situation now, yes. Well, but I mean, it goes forward. Yes, Your Honor. Is it conceivable in your mind that after discovery there would be further motions for summary judgment? In the underlying case? Well, the coverage case will be over. If this Court affirms the coverage case is over. I understand the coverage case. Whatever happens in the tort case, who knows? Maybe my client will settle it. I don't know. Is there, are there any cases where you think there would ever be a viable cause of action against a plaintiff where it is so clear that it was nothing more than, after the case is over, the way the evidence comes, that it was just a transparent effect, a transparent attempt to get into coverage, and that the pleadings, the alternative pleadings, were not in good faith? I mean, that, and... Well, certainly, but that wouldn't be for the insurance company to bring that action. I think it would be for someone like Mr. Thompson to bring that action on behalf of his clients, that the allegations were in bad faith. They had no loss if they get their defense costs paid. If the insurance company can do that, that would be an interesting opinion if this Court were to write that, because I think then the plaintiff's bar's reaction to pleading this is not going to be what the plaintiff's lawyer did here. If he really thought there was negligent conduct, he would have put a four-count complaint right out of the gate. Didn't do that. He did it after he saw the insurance company's position. And the timing is bad. The allegations are suspect. Is it a 137 violation? I don't know. My function is to represent a carrier as to whether it has a duty to defend, and on these allegations I submit to the Court it doesn't. If the Court wants to make a shot across the bow of the plaintiff's bar, that although they are in fact the architects of coverage, and they need to be careful in how they plead, if they really want to allege if this is a neighbor vendetta, maybe that's what it really is, then be mindful that if you're going to plead intentional conduct and you're going to plead an intent to harm, you're going to plead yourself outside of insurance coverage. So you have to hope the defendant has the wherewithal to pay you. But if you really want to get paid for the injuries you claim you've sustained, then be mindful of how you're doing it. Don't plead it that way. Plead it as negligence, and then we wouldn't be here. None of us would be here discussing these issues. But to do it in this manner smacks of nothing more than a transparent attempt to plead into coverage. If it's a 137 violation, I can't tell on this record. There may be a case that will come down that will be. What we'd like to see is a decision with some teeth in it that tells the plaintiff's bar not to do this. This court has its first opportunity to address it. I already mentioned the first, second, third, and fifth have already addressed it, about the transparent attempt to plead into coverage. Lawyers know how to plead there. Maybe the fourth district counties need to see this from this court. Thank you, Your Honor. We ask you to reverse. Thanks to both of you. The case is submitted. The court stands in recess.